## Evans *versus* Fegely.

1. Evans contracted under seal to sell to Fegely his right, &c., in the real and personal property of E. F. & Co., Fegely indemnifying him against damages for failure to fulfil any contract of the firm.   Fegely agreed that if such damages should not be recovered, nor he suffer from fire to the amount of $2000, he would pay Evans $1000 in two years.   Evans agreed if Fegely should not realize $7000 from the real estate or the valuation of it by men at the end of that period should not amount to that sum clear of improvements, he would relinquish the $1000.   In an action by Evans for the $1000, *Held*, that the burden was on Fegely to show that he had not realized or that the value of the estate less improvements was not $7000.

2. The covenants were several and distinct.

3. If Fegely had not realized the required sum or the property was less than that value, it was his duty to notify Evans.

January 17th 1871.   Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ.   SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county:* No. 174, to July Term 1870.

This was an action of covenant, issued November 2d 1867, by William D. Evans against Isaac Fegely.

The foundation of the action was the following instrument:—

" Whereas, William D. Evans having sold to me all his right, title and interest in the real and personal property belonging to the firm of Evans, Fegely & Co., and I have given the said William D. Evans my indemnifying bond for three thousand dollars as security against any railroad company that may claim damages for not fulfilling any contract made with the firm of Evans, Fegely & Co.   Now I hereby agree with the said William D. Evans, if such damages are not recovered from me nor I meet with any accident by fire amounting to more than two thousand dollars while the present car work is on hand, I will pay or cause to be paid to the said William D. Evans, his heirs, executors or assigns, the sum of one thousand dollars in two years from the date hereof, or sooner if determined, and if not paid by April 1st 1865, then I agree to pay him legal interest on the same until

[Evans *v.* Fegely.]

April 1st eighteen hundred and sixty-six. The said William D. Evans also agrees that in case the said Isaac Fegely does not realize the sum of seven thousand dollars out of the real estate or the valuation by three disinterested men at the expiration of that time should not amount to that sum clear of improvements made by Isaac Fegely, then the said William D. Evans is to relinquish his claim to one thousand dollars.

" Witness our hands and seals this sixth day of April, eighteen hundred and sixty-four.

" ISAAC FEGELY.  [L. S.]"
" WM. D. EVANS.  [L. S.]"

The suit was to recover the $1000 mentioned in the agreement.

The plaintiff, upon the trial below, gave the agreement in evidence, and showed that the property therein referred to was sold by the defendant in the spring of 1867, for $10,000.

The plaintiff then offered to show that no improvements had been added to the property by the defendant of sufficient amount to affect the recovery of the plaintiff under the agreement, to be followed by evidence that no damages had been recovered against the defendant by any railroad company upon any contract made with the firm of Evans, Fegely & Co., also that no accident by fire had taken place to the damage of the defendant.

The plaintiff offered also to prove by three disinterested witnesses that on the 1st of April 1866, the property described in the agreement was worth over $7000, clear of improvements made by the defendant.

These offers were rejected by the court, and several bills of exception sealed taken by plaintiff.

The defendant offered no testimony, and the court instructed the jury to render a verdict in his favor.

The verdict was for the defendant.

The plaintiff took a writ of error, and assigned for error the rejection of the offers of evidence, and directing a verdict for the defendant.

*B. M. Boyer* and *D. H. Mulvany*, for plaintiff in error.

*C. Hunsicker* and *J. Boyd*, for defendant in error.—There was no offer of proof that the condition happened within the time fixed: Benninger *v.* Hankee, 11 P. F. Smith 345; Smith *v.* Frazier, 3 Id. 226. Appraisers were the chosen and only tribunal of the parties: McAdams *v.* Stillwell, 1 Harris 90; Reynolds *v.* Caldwell, 1 P. F. Smith 298; Herdic *v.* Bilger, 11 Wright 60. Time was of the essence of the contract: Stevenson *v.* Maxwell, 2 Comstock 408; Chitty on Contracts 337. There was no consideration for the contract: Brua's Appeal, 5 P. F. Smith 294.

[Evans *v.* Fegely.]

The opinion of the court was delivered, February 9th 1871, by
Agnew, J.—This case turns upon the true interpretation of the
agreement between Isaac Fegely and William D. Evans, of the 6th of
April 1864.  It is an agreement of two parts under the respective
hands and seals of the parties.  The covenants are clearly several
and distinct, each party covenanting with the other for those
things he should perform.  Fegely, on his part, covenants with
Evans that "if such damages (those mentioned in the preamble)
are not recovered from me, nor I meet with any accident by fire
amounting to more than $2000, while the present car-work is on
hand, I will pay or cause to be paid by the said W. D. Evans, his
heirs, executors or assigns, the sum of $1000, in two years from
the date hereof, or sooner if determined," &c.   Then follows a
provision for interest.  Here the covenant of Fegely ends, and
his liability on his own covenant is definitely fixed, subject to the
two conditions as to damages and fire.  Then we come to the
separate and distinct covenant of Evans with Fegely, by which he
agrees "that in case the said Isaac Fegely does not realize the
sum of $7000 out of the real estate, or the valuation by three
disinterested men at the expiration of that time, should not
amount to that sum *clear of improvements made by Isaac Fegely*,
then the said William D. Evans is to *relinquish* his claim to
$1000."  Now this covenant on part of Evans is not only distinct
from the covenant of Fegely to pay on the two conditions named,
but is different in its subject.  If we examine this subject we find
it to be one wholly within the knowledge of Fegely alone.  Who
but he can know whether he has realized $7000 from the real
estate, or what the cost of the improvements made by him ?  If
he has not realized the required sum, or if the property clear of
the improvements be less than that sum in whole, clearly it is his
duty to notify Evans of the fact.  Undoubtedly, in the absence
of notice to the contrary, Evans has a right to suppose that no
third condition of recovery will be injected into the covenant of
Fegely to pay the $1000.   The fact that Fegely did not make it
a third condition in his covenant to pay, proves that it was inten-
tionally reserved for the covenant of Evans, which is one of simple
relinquishment.  He covenants to relinquish the $1000, but
when ? Clearly only when it appears that Fegely has not realized
his $7000, or that the value of the real estate less the cost of
improvements is not $7000.  Now this made Fegely the *actor*.
Not having exacted it as a condition of his own covenant, he was
bound to give notice to Evans that the property had not realized
the required sum if sold; or if not sold, to demand a valuation
in the mode expressed by Evans's covenant.  It is not to be pre-
sumed that Evans, who had left the township, should know the
affairs of Fegely.  The latter was the only party who could know
the state of his affairs, the condition of the property, what

[Evans *v.* Fegely.]

improvements he had made, and how much they had cost. He therefore must be presumed to know of the happening of the contingency on which the covenant of Evans was to be performed, and was bound to give notice of it and demand a relinquishment. Thus the separate character of the covenant, its independence of the conditions reserved by Fegely as the terms of performance of his own covenant to pay, the language of Evans's covenant "to relinquish," and the nature of the subject, threw upon Fegely the duty of giving notice of the happening of the contingency, and of demanding an appraisement. The burthen of proof therefore lay on him and not on Evans. There was no reason that he should object to Evans taking the laboring oar, and clearly the court erred in taking the case from the jury.

The judgment is therefore reversed, and a *venire facias de novo* awarded.